IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-01978-PSF-OES

JAMES FORD,

    Plaintiff,

v.

LOCO, INC.,

    Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on defendant's Motion for Summary Judgment Regarding Plaintiff's Age Discrimination Enforcement Claim (Dkt. # 22), filed September 22, 2005, and defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Claim for Back Pay (Dkt. # 24), filed September 22, 2005.  Plaintiff James Ford filed responses to each on October 21, 2005 (Dkts. ## 37 and 39, respectively). Defendant Loco, Inc. filed replies to each on November 7, 2005 (Dkts. ## 42 and 41, respectively).

**I. BACKGROUND**

This case arises out of Mr. Ford's employment with Defendant Loco, Inc.  Mr. Ford worked for Loco in Grand Junction, Colorado as a convenience store clerk from February of 2002 until April 28, 2003.  Def.'s S.J. Br. Re. ADEA at 1; Compl., ¶ 10.  He resigned following an altercation with his shift supervisor, Lori Beeles.  Ford Dep., Ex. A to S.J. Br. at 91:11-92:17.  In his complaint, Mr. Ford alleges violations of the Age

Discrimination Enforcement Act ("ADEA"), 29 U.S.C. § 621 *et seq.* in the context of both his employment and his resignation. Specifically, Mr. Ford alleges that Loco created both a hostile work environment and constructively discharged him in violation of the ADEA on the basis of comments and actions by Ms. Beeles, another employee of Loco and Mr. Ford's shift supervisor. *See* Pl.'s Resp. Br. Re. ADEA at 1-2.

On December 25, 2002, during Mr. Ford's employment with Loco, he turned 62 years old, and thereby became eligible for social security benefits. Compl., ¶ 12. Around that time, in December of 2002, Mr. Ford informed the General Manager of the local store, Michael Beasley, that he would need to reduce the number of hours he worked in order to receive his benefits. Ford Dep., 61:1-25. During a subsequent employee meeting, Mr. Beasley announced that Mr. Ford would be taking time off to avoid impacting his receipt of social security benefits. *Id.* Following this announcement, Ms. Beeles commented to Mr. Ford that she wished she was old enough to take time off and get paid for it. Ford Dep. at 62:20-23.

According to Mr. Ford, following this announcement, his work relationship with Ms. Beeles quickly disintegrated. She began making negative and humiliating comments about Mr. Ford's age to Mr. Ford himself, other employees, and customers. *See* Ford Aff., ¶¶ 3-5, Ex. A to Pl.'s Resp. Br. Re. ADEA at 2; Def.'s S.J. Br. Re. ADEA at 3.[1] Further, Ms. Beeles allegedly attempted to keep Mr. Ford at the store past his

---

[1] Defendant Loco objects to the use of Mr. Ford's affidavit, submitted with his Response brief, on the bases that the statements are unsubstantiated allegations and are contradictory to his previous sworn deposition testimony. Def.'s Reply at 1. Although it is unclear why certain factual assertions appear in plaintiff's affidavit but not in his deposition, the Court finds that for purposes of the instant motion the affidavit does not contradict previous testimony.

scheduled shift to complete extra tasks not required of other employees. *See* Ford Aff., ¶ 5; Def.'s S.J. Br. Re. ADEA at 4. Mr. Ford maintains that he contacted Mr. Beasley, the General Manager, to complain about both Ms. Beeles's discriminatory comments and her attempts to impose additional duties, but the harassment continued. *See* Ford Aff., ¶¶ 3, 5.

Ms. Beeles's comments–including calling Mr. Ford an "old fart," "senior citizen," "old man" and "grandpa," among other ageist epithets, and cautioning others not to "hire any more out of the nursing home" (*see* Ford Dep. at 63:13-15; Ford aff., ¶ 4)–and extra demands continued until April 27, 2003, when Mr. Ford and Ms. Beeles engaged in a shouting match at work after Ms. Beeles again attempted to assign duties to Mr. Ford as his shift was ending. Mr. Ford walked out and submitted his letter of resignation. *See* citations to Ford Dep. referenced in Def.'s S.J. Br. Re. ADEA at 4-5.

Loco seeks summary judgment, alleging (1) that Mr. Ford cannot show that Loco constructively discharged him from his employment; and (2) that no issues of material fact exist regarding his hostile work environment claim and Loco is entitled to judgment as a matter of law. Def.'s Mot. Summ. J. Re. ADEA at 1. Loco also seeks partial summary judgment on Mr. Ford's claim for economic damages, seeking dismissal of

---

Further, to the extent plaintiff used his affidavit to amplify his deposition testimony, the Court cannot say the affidavit is an attempt to create a sham fact issue. *See Burns v. Board of County Comm'rs of Jackson County*, 330 F.3d 1275, 1281-82 (10th Cir. 2003) ("[I]n determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements. . . . [A court] will disregard a contrary affidavit, however, when it constitutes an attempt to create a sham fact issue."). Additionally, the affidavit, rather than providing "unsubstantiated allegations" as Loco contends, provides specific factual contentions based on claimed personal knowledge that are in line with Mr. Ford's previous deposition testimony.

that claim on the basis that Mr. Ford failed to mitigate his damages.  Def.'s Mot. Summ. J. Re. Back Pay at 1.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party.  *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).  To defeat a properly supported motion for summary judgment of the defendant, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In addition, "'where the non-moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

### III. ADEA CLAIM

#### A. Hostile Work Environment

To survive summary judgment on a hostile work environment claim under the ADEA, "a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (internal quotations and brackets omitted). Such a showing is made by looking at all the circumstances, including the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating rather than a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Id.* Additionally, "the environment must be both subjectively and objectively hostile or abusive." *Id.* (internal citations omitted).

The Tenth Circuit has held that the "severity and pervasiveness evaluation [of a hostile work environment claim] is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Technology Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999); *see also Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) ("summary judgment should seldom be used" in evaluating discrimination, specifically severity and pervasiveness of harassment; plaintiff presented triable issues of fact on severity and pervasiveness and on adequacy of response by employer), cited by the Tenth Circuit in *O'Shea*.

Loco contends that Mr. Ford's allegations do not rise to the level of severity required for a hostile work environment claim, and that the alleged treatment by Ms. Beeles was not due to his age but due to his additional source of income.  Mr. Ford submits his own deposition and affidavit as well as the deposition of a co-worker, Elisa Hughes, which suggest a more severe environment than characterized by Loco.  Ms. Hughes testified that Ms. Beeles "was always harassing [the plaintiff] about his work" and would call Mr. Ford "lazy" and refer to him as "an old fart," "the old man in the group," "too old to be working" and that he should retire.  Hughes Dep. at 8:2, 8:16-17, 8:24-25, 9:1-5, 10:8-19, Ex. C to Pl.'s Resp. Br. Re. ADEA.   Ms. Hughes also recounted comments about Mr. Ford being in a nursing home rather than working, and being a "senile old man."  *Id.* at 9:8-9, 12:24.  She testified that she reported the harassment to the General Manager, Mr. Beasley, "several times," meaning "[m]ore than ten."  *Id.* at 12:9-22.

Loco does not challenge the veracity of this testimony, but asks the Court to draw the conclusion that the harassment was not sufficiently severe or offensive and that it was not based on his age, but on his extra source of income and Ms. Beeles's desire to be "the big boss."  *See* Def.'s S.J. Br. Re. ADEA at 13–14.  These are exactly the kind of factual determinations that are inappropriate at the summary judgment stage, especially in the absence of any testimony by Ms. Beeles herself or any contradictory testimony by Mr. Beasley or others.  Viewing the evidence in the light most favorable to Mr. Ford, including the alleged failures of Loco to respond to plaintiff's' requests for redress, the Court cannot say that Loco is entitled to judgment

as a matter of law on Mr. Ford's hostile work environment claim and therefore **DENIES** defendant's motion for summary judgement on plaintiff's hostile work environment claim.

### B. Constructive Discharge

A constructive discharge "occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit." *MacKenzie*, 414 F.3d at 1281 (10th Cir. 2005); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) ("Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.") (internal quotation marks omitted).

The Supreme Court has noted that a constructive discharge based on a hostile work environment requires "something more" than actionable harassment, giving rise to a hostile work environment claim. *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). A plaintiff bringing a hostile-environment constructive discharge claim "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1160 (8th Cir. 1997) ("[A]lthough there may be evidence from which a jury could find sexual harassment, . . . the facts alleged [for constructive discharge must be] . . . so intolerable that a reasonable person would be forced to quit."); and *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997) ("[U]nless conditions are beyond

'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.")).

Mr. Ford has not carried his heavy burden of showing that "he had no other choice to quit." *Garrett*, 305 F.3d at 1221 (affirming grant of summary judgment on constructive discharge claim). Although he presents evidence from which a reasonable jury might infer that the work environment was hostile based on Mr. Ford's age, he fails as a matter of law to present that "something more" from which a jury might infer that he was constructively discharged.

The evidence suggests, rather, that he did have other options short of quitting, especially given the occasional and limited nature of the alleged ageism he endured on the job. In particular, the Court notes that although Mr. Ford informed Mr. Beasley of the harassment, the record does not indicate that he communicated to that superior that the problem was unbearable, complained that the alleged discrimination was severe, pervasive, or something akin to constructive discharge, or sought relief beyond the local general manager level. He also does not indicate that he sought a schedule change to avoid working with Ms. Beeles. Further, his contact with the EEOC came in August of 2003, four months after his resignation. Contacting the EEOC during his employment in order to seek relief was an option short of quitting. Finally, Loco notes that Mr. Ford and Ms. Beeles only worked together for 26 hours over the last eight weeks that he was employed by Loco–an amount of time that represents only 12 percent of his work time at Loco during that same period. Def.'s S.J. Br. Re. ADEA at 6.

While these circumstances do not necessarily establish an acceptable or improvable situation, collectively they undermine Mr. Ford's assertion that the hostile work environment was so intolerable that he was forced to resign. Only a small percentage of his work time was actually spent with Ms. Beeles, the sole alleged cause of the hostility and discrimination, and only a limited portion of that time together involved arguably actionable discrimination. Moreover, while plaintiff complained to his local supervisor about the situation, the record is unclear whether he brought to his employer's attention the absolute unacceptability of the status quo. Additionally, he never attempted to go up the chain of command after he failed to get redress from Mr. Beasley. Thus, Mr. Ford simply does not present sufficient evidence to survive summary judgment that the conditions were "beyond 'ordinary' discrimination, [where] a complaining employee is expected to remain on the job while seeking redress." *Suders*, 542 U.S. at 147 (citing *Perry*, 126 F.3d at 1015); *see also Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."), cited by the Tenth Circuit in *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997). Therefore, the Court **GRANTS** defendant's motion for summary judgement on plaintiff's constructive discharge claim.

## IV.  BACK PAY CLAIM

Loco also moves for partial summary judgment on plaintiff's claim for back pay, requesting that this Court limit recovery of any economic damages because Mr. Ford failed to mitigate his damages by seeking substitute employment.

In light of the grant of summary judgment on plaintiff's constructive discharge claim, Mr. Ford's only remaining claim is for hostile work environment. Based on Tenth Circuit case law, back pay is not an appropriate remedy for such a claim in the absence of actual or constructive termination by the defendant employer or evidence that the hostility led to reduced salary during employment. *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1236-37 (10th Cir. 2000) ("back pay is not available absent a showing of constructive discharge" and "[b]ecause the jury rejected the Plaintiffs' claims that they were constructively discharged, the district court did not err in concluding that they were not entitled to back or front pay"); *see also Hertzberg v. SRAM Corp.*, 261 F.3d 651, 660 (7th Cir. 2001), *cert. denied*, 534 U.S. 1130 (2002) (noting the "requirement that a plaintiff establish a discriminatory discharge in order to receive lost pay"). In essence, a plaintiff in such circumstances has a duty to mitigate his damages by staying on the job in the face of an ageist work environment pending resolution of his claims. *See Suders*, 542 U.S. at 147. Therefore, defendant's motion for partial summary judgement on plaintiff's claim for back pay is **DENIED** as moot.

## V. CONCLUSION

For the foregoing reasons, this Court:

1. **DENIES** defendant's motion for summary judgement (Dkt. #22) on plaintiff's hostile work environment claim;

2. **GRANTS** defendant's motion for summary judgement (Dkt. #22) on plaintiff's constructive discharge claim; and

3.  **DENIES** defendant's motion for partial summary judgement (Dkt. #24) on plaintiff's claim for back pay.

Based upon this Order and the Final Pretrial Order signed October 12, 2005 (Dkt. # 33), remaining are plaintiff's hostile work environment claim under the ADEA and his state law claims arising under C.R.S. § 24-34-402.

DATED: December 30, 2005

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge